## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLEEN HAYES | : | CIVIL ACTION |
| | : | |
| v. | : | NO.   23-1204 |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY | : | |

## MEMORANDUM

MURPHY, J.                                                    August 18, 2025

Before us is Magistrate Judge Hey's report and recommendation, filed February 4, 2025, recommending affirmance of the ALJ's denial of disability insurance benefits to Ms. Hayes, and Ms. Hayes's objections to that R&R.  *See* DI 23; DI 24.  Under 28 U.S.C. § 636(b)(1), we review de novo the portions of the R&R to which Ms. Hayes lodged specific, timely objections. We give "reasoned consideration" to all other portions of the R&R by reviewing for plain error. *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (quoting *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)).

Because the ALJ's determinations were based on substantial evidence, we affirm.  In light of an objection, we modify the reasoning in a portion of the R&R that deals with the ALJ's consideration of Mr. Purewal's medical source opinion.  We adopt all other portions of the R&R.  Our reasoning is fully explained below.

## I.    Background

Ms. Hayes did not object to Judge Hey's detailed summary of the procedural and factual background related to this action.  After reviewing for plain error, we adopt the background of the R&R which includes the sections of the R&R titled "ALJ's Findings and Plaintiff's Claims," "Plaintiff's Claimed Limitations and Testimony at the Hearing," and "Summary of the Medical

Record."  *See* DI 23 at 4-22.  For the sake of clarity in this memorandum, we give a shortened version of the detailed background in the R&R.

Ms. Hayes alleges disability from injuries sustained in a May 2020 workplace fall, primarily affecting her spine, right hip, right knee, and left wrist.  In March 2021, she was in a motor vehicle accident, aggravating her symptoms and causing additional shoulder problems.  Also in March 2021, she underwent gastric sleeve surgery to treat morbid obesity.  Over the course of approximately two years, she received various treatments — including physical therapy, epidural steroid injections, and topical and oral medication — from different care providers for persistent pain and functional limitations related to degenerative disc disease, arthritis, and related musculoskeletal impairments.

On December 3, 2020, Ms. Hayes filed an application for disability insurance benefits.  *See* DI 23 at 2.  Her application was denied twice, initially and on reconsideration, and she then requested a hearing before an ALJ.  *See id.*  At a January 13, 2022 hearing, Ms. Hayes testified that she continues to experience persistent and debilitating pain in her lower back, legs, neck, and shoulder, and that her condition significantly limits daily activities, requiring frequent breaks.  *See id.* at 2, 6-7.  She indicated that she could handle basic personal care, cook simple meals, and shop for groceries, but these activities were performed slowly, intermittently, and with difficulty.  *Id.* at 6-7.  The ALJ issued her decision on April 20, 2022.

To prevail on a claim for social security benefits, a "claimant must demonstrate an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429,

431 (3d Cir. 1999) (quoting 42 U.S.C. § 423(d)(2)(A)). The Commissioner uses a five-step

evaluation process to determine whether a claimant is disabled. *Id.* at 431-32. When issuing her

decision, the ALJ followed that process and found that:

- **(Step 1)** Ms. Hayes has not engaged in substantial gainful activity since May 29, 2020;

- **(Step 2)** Ms. Hayes has the following severe impairments: cervical and lumbar

  degenerative disc disease, acromioclavicular joint arthritis of the left shoulder,

  degenerative arthritis of the right knee, and obesity;

- **(Step 3)** Ms. Hayes does not have an impairment or combination of impairments that

  meets or medically equals the severity of a listed impairment in 20 CFR Part 404,

  Subpart P, Appendix 1;

- **(Step 4)** Ms. Hayes is unable to perform any of her past relevant work; and

- **(Step 5)** considering Ms. Hayes's age, education, work experience, and residual

  functional capacity, there are jobs that exist in significant numbers in the national

  economy that the claimant can perform.

*See* DI 9-2 at 18-31 (ECF); *Zirnsak v. Colvin*, 777 F.3d 607, 610-11 (3d Cir. 2014) (explaining

the five-step evaluation process and noting that the burden is on the claimant for the first four

steps but shifts to the Commissioner on step five). During the ALJ's analysis leading to those

findings, the ALJ found that Ms. Hayes "has the residual functional capacity to perform

sedentary work as defined in 20 CFR 404.1567(a) except that she can occasionally balance,

stoop, kneel, crouch, crawl, and climb ramps or stairs but she can never climb ladders, ropes, or

scaffolds. She must avoid concentrated exposure to extreme cold, wetness, humidity, and

vibration." DI 9-2 at 20-29 (ECF).

The Appeals Council declined to review Ms. Hayes's case on February 2, 2023, making the ALJ's decision final. *See* DI 9-2 at 2 (ECF). Ms. Hayes subsequently filed this action under 42 U.S.C. § 405(g). *See* DI 1. We originally referred the matter to Magistrate Judge Lloret, and it was later reassigned to Magistrate Judge Hey. *See* DI 8. Judge Hey reviewed the full administrative record and issued her R&R recommending affirmance of the ALJ's decision. *See* DI 20; DI 23.

Ms. Hayes now raises two objections to the R&R. *See* DI 24. First, she challenges Judge Hey's conclusion that the ALJ did not err when discrediting the February 2022 medical opinion of her treating pain-management physician, Dr. Purewal. *See* DI 24 at 1-10; DI 23 at 22-30. Second, she argues that Judge Hey incorrectly found that the ALJ properly discounted her subjective reports of pain and functional limitations and credited her daily activities. *See* DI 24 at 11-12; DI 23 at 30-33. We address each objection in detail below.

## II.    Discussion

We review de novo those portions of the R&R to which Ms. Hayes has lodged specific, timely objections. 28 U.S.C. § 636(b)(1). We must uphold the ALJ's factual findings — including the ALJ's determination of disability — if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak*, 777 F.3d at 610; 42 U.S.C. § 405(g). "The substantial evidence threshold is not high." *Sudler v. Comm'r of Soc. Sec.*, 827 F. App'x 241, 244 (3d Cir. 2020) (citing *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019)). Under this standard, we review the record, do not re-weigh evidence, and are deferential to the judgment of the fact finder. *See Zirnsak*, 777 F.3d at 610-11; *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

### A.  Objection 1: ALJ's Consideration of Dr. Purewal's Medical Source Opinion

Magistrate Judge Hey found that the ALJ's determination that the medical opinion of Ms. Hayes's treating pain-management physician, Dr. Miteswar Purewal, was "unpersuasive" was supported by substantial evidence.  DI 23 at 26-30.  In reaching this conclusion, Judge Hey explained when the ALJ's decision was, read as a whole, appropriately supported by the evidence within the decision.  *Id.* at 30.  Specifically, Judge Hey found: (1) the ALJ's analysis of Dr. Purewal's opinion was sufficiently supported when read alongside the ALJ's earlier detailed summary of medical evidence; (2) the ALJ reasonably characterized the diagnostic imaging as showing mostly degenerative rather than severe, disabling abnormalities; (3) the ALJ properly described clinical examination findings as demonstrating "minimal positive findings" as inconsistent with the significant functional limitations suggested by Dr. Purewal; and (4) the ALJ properly considered Ms. Hayes's documented improvement with routine treatments, including medication, injections, and physical therapy, as further undermining Dr. Purewal's opinion.  *Id.* at 26-30.

Ms. Hayes raises several specific objections to the R&R.  DI 24 at 1-10.  First, Ms. Hayes argues that Judge Hey failed to acknowledge that the ALJ's explanation rejecting Dr. Purewal's opinion was improperly conclusory, lacking specific reference to medical evidence contradicting his opinion, thereby precluding meaningful review.  DI 24 at 2.  Second, Ms. Hayes contends that Judge Hey incorrectly relied on examinations by Drs. Armando Mendez and David Klebanoff to justify the ALJ's decision, even though the ALJ herself found these doctors' opinions "unpersuasive."  *Id.* at 2-4.  Third, Ms. Hayes asserts Judge Hey failed to appreciate that the ALJ inaccurately characterized her treatment as "routine" and medications as

"mild," despite Dr. Purewal's explicit indication that conservative treatment was insufficient, prompting interventional care, including epidural injections and medications such as Valium, Cymbalta, Lyrica, and Amrix.  DI 24 at 6-8.  And Ms. Hayes criticizes the ALJ's decision because it does not explicitly mention Valium.  *Id.* at 7.  Finally, Ms. Hayes argues that Judge Hey should have recognized that the ALJ improperly substituted her lay interpretation of diagnostic imaging for the expert medical opinion provided by Dr. Purewal.  She emphasizes that Dr. Purewal explicitly grounded his opinion in MRI and EMG findings indicative of radiculopathy and neural foraminal stenosis, contrary to the ALJ's generalized characterization of mere degenerative changes.  DI 24 at 8-9.  We review these disputes de novo.

Under the applicable regulations governing medical source opinions for claims filed on or after March 27, 2017, an ALJ evaluates medical opinions by addressing their "supportability" and "consistency."  20 C.F.R. § 404.1520c(a), (b)(2)-(3).  Supportability refers to the extent to which the medical source opinion is supported by objective medical findings and explanations. *See id.* § 404.1520c(c)(1).  Consistency refers to how the medical opinion aligns with other record evidence — such as clinical examination findings, diagnostic imaging results, treatment notes, and documented responses to treatment — provided by other medical and nonmedical sources.  *See id.* § 404.1520c(c)(2).  The regulations require that the ALJ's decision articulate how both the supportability and consistency factors were considered in assessing a medical opinion's persuasiveness.  *See id.* § 404.1520c(b)(2).  While the ALJ is not required to use any particular language or format, the ALJ's explanation must provide sufficient clarity and detail to enable meaningful judicial review.  *See Jones v. Barnhart*, 364 F.3d 501, 504-05 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000)); *see also*

6

*Fargnoli v. Massanari*, 247 F.3d 34, 41-42 (3d Cir. 2001).  Moreover, reviewing courts may appropriately read an ALJ's decision "as a whole," but the ALJ's reasoning must be apparent from the decision itself and may not be supplemented through post-hoc rationalizations.  *Jones*, 364 F.3d at 505; *see Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943); *Fargnoli*, 247 F.3d at 44 n.7.

We agree with Magistrate Judge Hey's conclusion that the ALJ's decision to discredit Dr. Purewal's February 2022 medical opinion was supported by substantial evidence.  The ALJ properly assessed the supportability and consistency of this medical source opinion by carefully comparing it with other record evidence — including objective diagnostic imaging, clinical examination findings, and documented responses to treatment — in compliance with applicable regulations.  *See* 20 C.F.R. § 404.1520c.

At the outset, we note a critical distinction that Ms. Hayes's objections overlook: medical opinions that reflect a medical provider's assessment of a claimant's functional limitations or disability differ from objective record evidence, which encompasses clinical observations, diagnostic imaging, treatment notes, and patient progress reports documented by medical providers.  It is not error for an ALJ to reject a medical provider's interpretation of the medical record as unpersuasive while simultaneously relying upon the same provider's objective clinical findings documented elsewhere in the record.  *See Chandler*, 667 F.3d at 361-62 (holding that the ALJ makes the ultimate disability and residual functional capacity determinations, and an ALJ's decision may credit or discredit medical opinions, in whole or in part, based on the ALJ's interpretation of the medical and nonmedical evidence); *Lucrecia T. v. O'Malley*, No. 23-3664, 2024 WL 3824859, at *7-8 (E.D. Pa. Aug. 14, 2024), *aff'd sub nom.*, *Taylor v. Comm'r Soc.*

7

*Sec.*, No. 24-2940, 2025 WL 1732927 (3d Cir. June 23, 2025) (explaining that "SSDI regulations do not require ALJs to give controlling weight to any medical opinion" and ALJ's need not discuss opinions that go to issues reserved to the Commissioner "at all").  Although the ALJ explicitly found Dr. Purewal's February 2022 medical source opinion in Exhibit 23F to be unpersuasive, the ALJ did not discount — and indeed relied upon — the separate medical evidence documented in records from the same provider in Exhibits 5F and 17F, along with other medical sources in Exhibits 20F-22F.

Judge Hey correctly concluded that substantial evidence supported the ALJ's decision, but we clarify here that the ALJ specifically cited record evidence and clinical findings from the treatment notes of Dr. Purewal (Exhibits 5F & 17F), May 2021 x-rays of Ms. Hayes left shoulder from Roxborough Urgent Care (Exhibit 20F), treatment records from Medical Rehabilitation Centers of Pennsylvania (Exhibit 21F), and primary care records from Temple Internal Medical Associates, which were explained in further detail in the earlier paragraphs summarizing the medical record, and did not credit the disability opinions of Drs. Mendez or Klebanoff, whose medical source statements the ALJ separately found unpersuasive.  *See* DI 9-2 at 20-29 (ECF).  Thus, ALJ's rejection of Dr. Purewal's opinion is supported by substantial evidence, and we adopt the Judge Hey's recommendation subject to this modification.

We do not find Ms. Hayes's remaining objections persuasive.  First, Ms. Hayes argues the ALJ's explanation lacked sufficient detail, making judicial review impossible.  *See* DI 24 at 1-2.  While concise, the ALJ's analysis was sufficiently clear and specifically identified medical evidence contradicting the extreme limitations provided by Dr. Purewal.   The ALJ explicitly cited Exhibits 5F, 17F, and 20F-22F, which document numerous findings explained in the

detailed summary of the medical record — including improvement in symptoms from physical therapy, medication, epidural steroid injections, and gastric sleeve surgery, along with imaging results conclusively showing only degenerative disease — that the ALJ found inconsistent with the significant restrictions asserted by Dr. Purewal.  DI 9-2 at 24, 28 (ECF).  While the reader may need to refer to the medical summary or records, when read in that context, the ALJ's reasoning is sufficiently articulated to enable meaningful judicial review.

Second, Ms. Hayes objects that the ALJ improperly characterized her treatment as "routine and conservative" and medications as "mild," minimizing the seriousness of her impairments.  DI 24 at 6-8.  However, the ALJ's characterization accurately reflects the record as a whole.  Ms. Hayes underwent multiple epidural steroid injections and was prescribed medications, such as Cymbalta, Elavil, Lyrica, Amrix, and Diclofenac.  *See* DI 9-2 at 23, 26-27 (ECF).  While not a legal conclusion, the ALJ's assessment of spinal injection treatments for pain as "routine and conservative" is consistent with prior holdings in this circuit.  *See, e.g., Sudler*, 827 F. App'x at 245 (finding that injections for pain management are a "relatively routine and conservative treatment"); *Brown v. Comm'r of Soc. Sec.*, No. 19-2110, 2020 WL 1244186, at *6 (E.D. Pa. Mar. 16, 2020) (considering treatments for mental health falling short of emergency, inpatient, or intensive treatment to be routine and conservative).  Further, the ALJ's characterization of Ms. Hayes's injections as "conservative" and medication regiment as "mild" is also supported the record as a whole and specifically by her testimony that she reported no significant negative side effects from her medication or injections.  *See* DI 9-2 at 27.  The ALJ's failure to expressly mention Valium does not overcome or contradict the lack of any

reported side effects noted in the record outside of Dr. Purewal's medical source opinion.[1]

Finally, Ms. Hayes argues the ALJ improperly engaged in lay interpretation of diagnostic imaging, disregarding expert medical opinion. This objection is also unpersuasive. The ALJ did not dispute the existence or accuracy of the MRI or EMG findings considered by Dr. Purewal, nor did she recharacterize any diagnoses. And the ALJ expressly noted the MRI's and EMG studies considered by Dr. Purewal in her decision. *See* DI 9-2 at 23 (ECF); DI 24 at 8; DI 23 at 15. Rather than independently interpreting the raw imaging results, the ALJ evaluated their clinical significance in the context of the full record, comparing the results with other clinical examination findings and documented treatment outcomes — including Ms. Hayes's improvement with conservative care — and found that her residual functional capacity was inconsistent with the "extreme physical limitations" suggested by Dr. Purewal. *See* DI 9-2 at 22, 28-29 (ECF). This was not improper lay interpretation, but rather a permissible evaluation of the consistency and supportability of Dr. Purewal's medical source opinion as compared to the entire record, including the findings from diagnostic imaging. *See Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."); *Chandler*, 667 F.3d at 362 ("[T]he ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision."); *Sudler*, 827 F. App'x at 245

---

[1] We note that the Relievus treatment records mention Valium as part of Ms. Hayes's medication regimen in January 2021, DI 11-6 at 31 (ECF), but subsequent records from Temple Internal Medical Associates in July 2021 omit Valium from the listed medications, DI 12-2 at 178-79 (ECF). The record does not establish when Ms. Hayes stopped taking Valium, and we fail to see how her reports of sedation and poor concentration contradict or otherwise undermine the ALJ's overall finding that her medication side effects were mild. *See also* DI 9-6 at 22 (ECF) (January 2021 function report from Ms. Hayes listing no side effects from medications).

(upholding ALJ's residual functional capacity determination that credited improvement injections and discredited the claimant's pain allegations).  That Dr. Purewal's opinion was supported by EMG findings of radiculopathy does not undermine the ALJ's residual functional capacity determination, which was supported by substantial evidence in the form of treatment records, documented improvement from injections, medication, physical therapy, and gastric sleeve surgery, and Ms. Hayes's own testimony regarding her daily activities.  *See* DI 9-2 at 28-29 (ECF).

### B.  Objection 2:  Symptom Testimony

Magistrate Judge Hey found that the ALJ properly followed the two-step evaluation for assessing subjective symptoms, focusing on the factors involving Ms. Hayes's daily activities, alleged symptoms, and treatment and medication under the second step.  *See* DI 23 at 30-31. Judge Hey concluded that the ALJ permissibly considered and weighed Ms. Hayes's self-reported daily activities alongside the medical record when evaluating her subjective symptom testimony.  *Id.* at 30-33.

Ms. Hayes objects, arguing that the ALJ overstated her daily activities and ignored important qualifiers — namely, that she performed tasks infrequently, slowly, and with assistance.  *See* DI 24 at 10-11.  She also contends that the ALJ erred by requiring objective evidence of her pain and relying on evidence of improvement with treatment.  *Id.* at 11.

We agree with Judge Hey that the ALJ's evaluation of Ms. Hayes's subjective complaints is supported by substantial evidence.  Under 20 C.F.R. § 404.1529(c), when assessing the intensity and persistence of a claimant's symptoms, the ALJ considers all available evidence, including objective medical findings, the claimant's statements, opinion evidence, and

other relevant factors such as daily activities, the type and effectiveness of treatment, and any measures taken to relieve symptoms.  The ALJ must determine whether the claimant's statements about the limiting effects of her symptoms are consistent with the record as a whole.  *See Zirnsak*, 777 F.3d at 612-13; *Sudler*, 827 F. App'x at 245-46.

Here, the ALJ provided a multi-faceted explanation for finding Ms. Hayes's statements less persuasive.  The ALJ noted that clinical findings —such as generally intact strength, and normal mental status — did not corroborate the extreme degree of limitation alleged.  *See* DI 9-2 at 26.  The ALJ also observed that Ms. Hayes's course of treatment, including injections and prescription medications, resulted in some reported improvement.  *Id.* at 26-27.  While Ms. Hayes contends that the ALJ improperly emphasized her daily activities, the decision reflects that these activities were cited as just one factor among several in evaluating her symptoms.  *See* 20 C.F.R. § 404.1529(c)(3); *see also Chandler*, 667 F.3d at 363 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").  The ALJ specifically acknowledged her statement that she "does household chores at a slower pace," but also noted her reports of engaging in a range of activities — including driving, grocery shopping, attending treatment, cooking, cleaning, managing finances, and leisure activities such as reading and walking — on a regular basis.  *See* DI 9-2 at 22; DI 9-6 at 15-24.  Viewed in the context of the objective medical findings and her treatment history, the ALJ's conclusion that her ability to perform these activities, even with self-reported limitations in pace, was inconsistent with claims of completely disabling symptoms was supported by substantial evidence.

We also reject Ms. Hayes's contention that the ALJ improperly required objective corroboration of her pain.  The ALJ acknowledged her pain complaints but permissibly

considered the objective record to determine how that pain affects her ability to work, which the regulations permit. *See* DI 9-2 at 26; 20 C.F.R. § 404.1529(c)(2) (objective evidence is "a useful indicator" for evaluating symptoms); *Sponheimer v. Comm'r of Soc. Sec.*, 734 F. App'x 805, 808-09 (3d Cir. 2018) ("[A]n ALJ should rely on 'objective medical evidence' and 'other relevant evidence' to evaluate the extent that the alleged symptoms limit the claimant's ability to do basic work activities[,] . . . includ[ing] precipitating or aggravating factors, symptoms, medication and treatment, and daily activities.").  Likewise, the ALJ did not err in noting improvement with treatment because treatment effectiveness is a relevant consideration in assessing symptom allegations.  *See id.* § 404.1529(c)(3)(iv)-(v).

In sum, the ALJ's assessment was grounded in the regulatory factors, supported by substantial evidence in the record, and adequately explained.  We agree with Judge Hey and adopt Section (D)(2) from the R&R.

## III.  <u>Conclusion</u>

Including the modifications to Judge Hey's analysis of the ALJ's decision to discredit Dr. Purewal's medical source opinion indicated in our analysis above, we adopt Judge Hey's R&R and find that the ALJ's decision is supported by substantial evidence.  An appropriate order follows this memorandum.